418 F.Supp. 383 (1976)
UNITED STATES of America, Plaintiff,
v.
CITY OF ST. LOUIS et al., Defendants.
FIREFIGHTERS INSTITUTE FOR RACIAL EQUALITY et al., Plaintiffs,
v.
CITY OF ST. LOUIS et al., Defendants.
Nos. 74-200C(4), 74-30C(4).
United States District Court, E. D. Missouri, E. D.
June 28, 1976.
*384 Barry E. Short, U. S. Atty., U. S. Dept. of Justice, James J. Gallagher, City Counselor, Forris D. Elliott, Richard A. Fredman and David A. Lang, St. Louis, Mo., for plaintiffs.
Jack L. Koehr, City Counselor, St. Louis, Mo., John H. Goffstein, Bartley, Goofstein, Bollato & Lange, Clayton, Mo., for defendants.

NUNC PRO TUNC ORDER
NANGLE, District Judge.
IT IS HEREBY ORDERED that paragraph 19 of the memorandum filed herein on April 9, 1976, D.C., 410 F.Supp. 948, be and is deleted and there be substituted in lieu thereof the following:
19. With regard to entry level positions, the parties stipulated with the consent of the Court that the terms contained in Appendix A (Partial Consent Decree) would be observed by the parties pending final decision by this Court and would be incorporated in the final decree herein. 19a. The statistical evidence adduced establishes that the entry level examination had a disparate impact upon black applicants. Defendants have come forward with no evidence of validation tending to show that this examination is related to job performance.
IT IS FURTHER ORDERED that the first paragraph on page 26 of the memorandum commencing with the words "The parties are in dispute . . ." be and is deleted and there be substituted in lieu thereof the following:
The statistical evidence established that the entry level examination had an adverse impact upon black applicants. Defendants have presented no evidence of validation. Absent such evidence, the examination may not be used to preclude appointment to entry level positions. See Griggs v. Duke Power Co., supra; Boston Chapter, NAACP, Inc. v. Beecher, supra. Accordingly, relief will be granted plaintiffs.
IT IS FURTHER ORDERED that the order of this Court filed on April 9, 1976, D.C., 410 F.Supp. 948, be and is deleted and there be substituted in lieu thereof the following order:
Pursuant to the memorandum filed this date,
IT IS HEREBY ORDERED, ADJUDGED, and DECREED that, pursuant to the stipulation of the parties,
1. The defendants shall, as a long range goal, seek to recruit and hire blacks in sufficient numbers so as to achieve a racial composition in the ranks of Firefighters within the City of St. Louis Fire Department that is more representative of the racial and ethnic composition of the City of St. Louis as a whole. The goal shall be to achieve a racial composition of Firefighters in the St. Louis Fire Department which is comparable to the civilian labor force for the City of St. Louis subject to the availability of qualified applicants. In order to fulfill this goal and subject to the availability of sufficient qualified black applicants, defendants shall adopt and seek to achieve a goal of hiring blacks for at least fifty percent (50%) of the vacancies for the entry level of Firefighter personnel in the Fire Department for each year during the life of this decree. For purposes of compliance with this goal, only those blacks completing their probationary period shall be counted. In no case shall defendants be required to displace incumbent *385 employees or to hire unneeded employees or unqualified employees in order to meet the goal.
2. The defendant City, through its officials and agents, shall take all reasonable steps consistent with its obligation to meet the goals set forth in paragraph 1 above, including contact with community organizations in the black communities, such as the Urban League and NAACP, and high schools with substantial minority enrollments, for the purpose of soliciting their help in informing minorities of employment opportunities in the fire department. The City shall also use its own resources, such as the facilities of the Personnel Department to recruit qualified minorities. Such effort on the City's part shall include announcements to radio, television, and other media directed at the black communities. The City shall also cooperate with and assist available independent programs which are aimed at recruiting minorities for the City Fire Department. The defendant City shall also utilize the services of incumbent black Firefighters in its recruiting efforts to the extent that such incumbents are willing and able to assist.
3. Defendants may make appointments from the current eligibility list for Probationary Firefighter so long as they meet the interim goals set out in paragraph 1, but in no event beyond the expiration of 2 years from the date of establishment of the list. Those blacks on the current list who are not appointed during this interim period and those blacks who applied and completed the written and physical agility tests in the 1971 and 1974 examinations but were not placed on the eligibility list shall be informed by defendants that they are eligible for the next examination for the position of Probationary Firefighter without regard to the maximum age limitation.
4. In fulfilling the hiring goal set forth in paragraph 1 above, the defendants may use such written screening devices or alternative systems of testing together with age and physical fitness criteria now used for measuring qualifications to become a Firefighter; provided, however, that the use of any written screening device shall not be a defense for failure to meet the interim hiring goals set forth in paragraph 1 above. Residence in the City of St. Louis shall continue to be a requirement for the selection of Firefighters.
5. If the defendants wish to use written examinations for qualifying or ranking applicants for the position of Firefighter in a manner inconsistent with the goal provided in paragraph 1, any such written examination must have been found to be job-related and validated by a criterion related study in accordance with Title VII of the Civil Rights Act of 1964, as amended, and the Guidelines enunciated thereunder, including the Guidelines contained in 29 C.F.R. 1607.1, et seq., or otherwise have been shown to have no discriminatory impact. If defendants wish to utilize any such written examination, they shall furnish to plaintiffs, subject to appropriate protective orders, at least sixty days prior to any intended use, evidence of the absence of adverse impact and/or a copy of the validation study, and any other relevant information concerning the test and its validity. If the parties agree that the test has no adverse impact or has been validated in accordance with Title VII of the Civil Rights Act of 1964, as amended, and the Guidelines thereunder, defendants may thereafter utilize the test. If the parties disagree, the examination shall not be utilized unless and until the Court determines upon motion and such evidentiary hearing as it deems appropriate that the test has no adverse impact, or that it has been validated in accordance with Title VII, as amended, and the Guidelines thereunder.
6. Defendants shall retain for a period of five years all records relating to the recruitment, selection and appointment of persons for the position of Firefighter, including applications submitted by all applicants, identified by race, all medical and background investigation files, evaluations of applicants, eligibility lists and *386 requisition forms with persons identified by race. Defendants shall also retain for a period of five years all records relating to performance in the firefighter training program and during the probationary period, including a statement in detail of the reasons for termination of any individual during training or during his probationary period. The plaintiffs' attorneys shall have the right to inspect and copy any or all such documents subject to appropriate protective orders upon reasonable notice to defendants without further order of the Court. In addition, defendants shall furnish the plaintiffs with such information or records as they may request in writing, provided that such requests shall not be unduly burdensome and that plaintiffs pay all reasonable costs incurred in furnishing such information and records.
7. For purposes of this Decree, a reporting period shall run from July 1 through December 31 and from January 1 through June 30 for each year. The first reporting period shall begin on July 1, 1975. Within thirty days after the close of each reporting period, defendants shall submit to the plaintiffs a written report (covering the preceding reporting period) containing the following information:
(a) The name, address, telephone number, date of appointment and race of each person appointed to the position of Firefighter.
(b) The number of persons, identified by race, disqualified for appointment to the position of Firefighter, classified by reason for disqualification.
(c) The name, address, telephone number, date of termination, and race of each person who was terminated or who resigned from the fire department prior to the completion of probation.
(d) The total number by race and rank of uniformed personnel on the Fire Department as of the close of the reporting period.
(e) A racially-identified copy of any eligibility list for Firefighter established during that reporting period.
8. In case of conflict between the terms of this Decree and the Statutes of the State of Missouri, any rules or regulations of the Civil Service Commission, or any charter or ordinances of the City of St. Louis respecting the employment or employees of the fire department, the terms of this Decree shall prevail.
9. At any time after five (5) years from the date of entry of this partial decree, defendants may move this Court on forty-five (45) days notice to plaintiffs for dissolution of this partial decree; and upon their showing that the goals of this decree in providing equal employment opportunities have been fully achieved, the decree may be dissolved.
IT IS FURTHER ORDERED, ADJUDGED, and DECREED that defendants shall have judgment against plaintiffs on all remaining issues in these causes.
IT IS FURTHER ORDERED, ADJUDGED, and DECREED that each party shall bear its own costs herein.